# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

ROY EDWARD SHELTON,

    Plaintiff,

vs.

CAROLYN W. COLVIN, Commissioner of Social Security,

    Defendant.

No. 14-CV-0122-LRR

ORDER

*TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

II.   **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

III.  **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

IV.  **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    A.   *Shelton's Education and Employment Background* . . . . . . . . . . . . *4*
    B.   *Vocational Expert's Testimony from Administrative Hearing Held on May 9, 2014* . . . . . . . . . . . . . . . . . . . . . . *5*
    C.   *Shelton's Relevant Medical History* . . . . . . . . . . . . . . . . . . . *6*

V.    **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
    A.   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . *10*
    B.   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . *12*
        1.   Listing 12.05C . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
        2.   RFC Assessment . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*
    C.   *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

VI.  **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

## I. INTRODUCTION

This matter comes before the court on the Complaint (docket no. 3) filed by Plaintiff Roy Edward Shelton on November 17, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Shelton asks the court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Shelton requests the court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On August 8, 2012, Shelton applied for both disability insurance benefits and SSI benefits. In his applications, Shelton alleged an inability to work since May 6, 2008 due to degenerative arthritis and a bulging disc in his lower back, and a learning disability. Shelton's applications were denied on November 29, 2012. On March 27, 2013, his applications were denied on reconsideration. On May 9, 2014, Shelton and his attorney appeared via video conference before Administrative Law Judge ("ALJ") Eric S. Basse for an administrative hearing.[1] Shelton and vocational expert Vanessa May testified at the hearing. In a decision dated September 16, 2014, the ALJ denied Shelton's claims. The ALJ determined that Shelton was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Shelton appealed the ALJ's decision. On October 27, 2014, the Appeals Council denied Shelton's request for review. Consequently, the ALJ's September 16, 2014 decision was adopted as the Commissioner's final decision.

---

[1] At the administrative hearing, Shelton was represented by attorney William P. Gordon. On appeal, Shelton is represented by attorney Ruth M. Carter.

On November 17, 2014, Shelton filed this action for judicial review. On January 29, 2015, the Commissioner filed an Answer (docket no. 7). On March 31, 2015, Shelton filed a Brief (docket no. 12) arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On June 2, 2015, the Commissioner filed a responsive brief ("Commissioner's Brief") (docket no. 14) arguing that the ALJ's decision was correct and asking the court to affirm the ALJ's decision. On June 8, 2015, Shelton filed a Reply Brief (docket no. 15).

### III. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id*. The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as "less than a preponderance of the evidence, but is 'such relevant evidence a reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). In determining whether the ALJ's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). The court not only considers the evidence which supports the

ALJ's decision but also the evidence that detracts from his or her decision. *See Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact." *Buckner*, 646 F.3d at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." (quoting *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002))).

## IV. FACTS

### A. Shelton's Education and Employment Background

Shelton was born in 1972. He completed the tenth grade and dropped out of school in the eleventh grade. Shelton testifed that while in school, he was enrolled in special education classes beginning in elementary school. After the eleventh grade, he had no

further education or training. In the past, Shelton worked as a commercial cleaner, production helper, floor cleaner, paint sprayer/sandblaster and material handler.

### *B. Vocational Expert's Testimony from Administrative Hearing Held on May 9, 2014*

At the administrative hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who is capable of:

> sedentary work . . . so we're basically in the usual six of eight sitting, two of eight, ten pounds. Can occasionally climb, balance, stoop, kneel, crouch and crawl, probably no ladders, ropes, scaffolds. That sounds I think reasonable considering his cane, should avoid concentrated exposure to cold, capable of simple routine tasks and also environments that have []very few workplace changes. So I'm talking about a, you know, very routine, repetitive sorts of tasks. No contact with the public. They can be around, but no, no interaction with the public to do your job tasks, can interact with coworkers and supervisors okay, but probably not in large groups, so no large groups of coworkers. No requirement to read instructions or write reports, in fact probably no reading requirement at all other than very, very basic simple things. No requirement for mathematical calculations, although some simple addition and subtraction would be okay.

Administrative Record at 51. The vocational expert testified that under such limitations, Shelton would be precluded from his past relevant work, but could perform the following jobs: (1) document preparer, (2) ticket counter and (3) sorter. The ALJ continued his questioning of the vocational expert:

> Q: Okay. So, if the person—add in avoid exposure to—or concentrated exposure to pulmonary irritants such as fumes, gases, dusts, so forth. That will change those jobs?
> A: No.
> Q: That—those—are those jobs available to someone who is illiterate?

5

>A: Yeah, for the most part [they are] just jobs that can be identified by demonstration.
>Q: Okay. If the person needs to lie down for oh, say 25 percent of the workday due to pain, but needs to recline say for—well, say 20 percent of the workday at unscheduled times. Any jobs?
>A: No.

*Id*. at 52.

### C. Shelton's Relevant Medical History

On September 7, 2010, Shelton met with Brian Jones, MPT, for a functional capacity evaluation. Shelton returned to Jones on September 14, 2010 to complete the evaluation. In his evaluation, Jones reviewed Shelton's impairment history:

> [Shelton] was initially injured in 2008 while working on the dock at Pearson's. He states he was lifting a heavy object when he experienced immediate pain. He had limited therapy at that time and later aggravated the initial back injury with a fall on the ice New Year's Eve 2009. Pain is now getting worse in his back and travels down to his right buttock. . . . There is pain and tingling at time[s] all the way to the foot.

*Id.* at 420. Shelton reported limitations in self-care requiring movement of his lower extremities and trunk. He also reported limitations in his ability to walk, work and care for his residence. According to Shelton, his pain level at rest is 8-9 out of 10, with 10 being the greatest amount of pain, and 10 out of 10 with activity. Muscle testing showed "[u]pper extremity strength including grip appears to be normal and with equal ability on left and right. Lower extremity . . . testing shows weakness on both sides with greater weakness in right compared to left." *Id.* at 420. Similarly, upper extremity range of motion was within "normal" limits, but right lower extremity range of motion was restricted when compared to left lower extremity. Upon testing, Shelton's maximum lifting ability was 20 pounds. Jones concluded that "[Shelton] provided good effort with functional testing." *Id.* at 421.

On October 6, 2010, Dr. Tracey Larrison, D.O., reviewed Shelton's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Shelton. Dr. Larrison determined that Shelton could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday and (5) push and/or pull without limitations. Dr. Larrison also determined that Shelton could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes or scaffolds. Dr. Larrison opined that Shelton should avoid concentrated exposure to hazards such as machinery and heights. Dr. Larrison found no manipulative, visual or communicative limitations.

On October 9, 2012, at the request of DDS, Shelton was referred to Dr. Harlan J. Stientjes, Ph.D., for a psychological evaluation. In reviewing Shelton's educational background, Dr. Stientjes noted:

> [Shelton] received special education services starting at 3rd grade and was teased frequently. He dropped out of school in 11th grade, saying his girlfriends had done his homework prior to that time. He has attempted to get a GED but cannot pass the tests. Test results reportedly say he has a 3rd grade reading level.

*Id.* at 596. In testing Shelton's memory, attention and concentration, Dr. Stientjes found:

> [Shelton] read slowly and laboriously, needing several words supplied. Content recall was vague. . . . He was unable to make any correct calculations in serial subtraction. He repeated three words as requested and later remembered one of them. Letter Number Sequencing score was at the 5th percentile. He made two errors in repeating a sentence but correctly followed a 3-step oral instruction.

*Id.* at 597. Upon examination, Dr. Stientjes diagnosed Shelton with major depressive disorder and presumed borderline intellectual ability. Dr. Stientjes opined that Shelton's

7

"[p]rospect of return to employment is comparatively weak. General cognitive ability may be above level of impairment but not appreciably." *Id.* at 598. Dr. Stientjes concluded:

> [Shelton] can master simple routines but will likely require more than typical repetitions. He can follow simple oral and written instructions with external structures and prompts. Carryover is likely to be inconsistent. He interacts acceptably but presents as mildly manipulative and self-serving. Safety judgment is basic. Change can be tolerated with assistance from external sources for interpretations of specifics and reminders.

*Id.* at 598.

On October 15, 2012, Shelton met with Dr. Robert J. Schultes, M.D., for a consultative examination. Shelton reported low back pain for 4 years, degenerative arthritis, difficulty bending, right lower extremity pain, a pinched nerve and bulging disc, a learning disability since childhood and an inability to read and write. Shelton also reported the following functional abilities:

> [Shelton] states he can do the following. He can lift 5-10 pounds 1 hour per day secondary to low back pain. He can carry 10 pounds 15 minutes per day secondary to low back pain. He can stand 1 hour per day secondary to low back pain. He can move about 1 hour per day secondary to low back pain. He can walk 1/2 mile secondary to low back pain. He can sit 20 minutes per day secondary to low back pain. He cannot do any stooping secondary to low back pain. He can climb 1 hour per day secondary to low back pain. He cannot kneel secondary to low back pain. He can crawl 1 hour per day. He can handle objects 2 hours per day secondary to shakiness. He can see, hear, and speak 8 hours per day. He can travel 1 hour per day. He has no[] problems with dust or fumes. He cannot work in temperatures above 70 degrees Fahrenheit secondary to dizziness, sweating, and then passing out. He can work around other hazards.

*Id.* at 602-603. Upon examination, Dr. Schultes diagnosed Shelton with chronic low back pain with right lower extremity radiculopathy, functional illiteracy, decreased range of motion, strength, and ambulation, asthma and chest tightness.

On June 3, 2014, DDS, again, referred Shelton to Dr. Stientjes for a second psychological evaluation. Upon meeting with Shelton, Dr. Stientjes found him to be "vaguely" oriented to date. He was unable to read a passage from a book at the 4th grade reading level. He made two errors in following a 3-step oral instruction. He had 25% recall of a short story read to him. Dr. Stientjes administered the WAIS-IV intelligence test to Shelton. Overall, Dr. Stientjes noted that Shelton demonstrated "modest" effort on the test, but believed the results were "acceptable and valid for current decision making." *Id.* at 685. Dr. Stientjes further noted that Shelton "tends to be inattentive to specifics and therefore does poorly on memory and processing speed tasks." *Id.* Shelton's full scale IQ score was 72. Dr. Stientjes concluded:

> Academic skills are very poor and likely impaired. General cognitive ability was assessed and verbal and non-verbal reasoning appear to be in the boderline to low average range. Inattention and effort depress the working memory and processing speed index scores. Overall functioning is consistent with borderline intellectual functioning.

*Id.* at 686. Dr. Stientjes diagnosed Shelton with major depressive disorder, reading disorder, math disorder, disorder of written expression and borderline general ability. Dr. Stientjes opined that Shelton is moderately limited in the ability to: understand and remember complex instructions, carry out complex instructions and make judgments on complex work-related decisions. Dr. Stientjes also opined that Shelton is markedly limited in the ability to: interact appropriately with supervisors and respond appropriately to usual work situations and to changes in a routine work setting. Finally, Dr. Stientjes indicated that Shelton would have difficulty with the capacity to remain focused and understand written material due to his impairments.

## V. CONCLUSIONS OF LAW

### A. *ALJ's Disability Determination*

The ALJ determined that Shelton is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps that an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey*, 433 F.3d at 577 (quoting *Goff v. Barnhart*, 421 F.3d 785, 789-90 (8th Cir. 2005)).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience." *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Shelton had not engaged in substantial gainful activity since May 6, 2008. At the second step, the ALJ concluded from the medical evidence that Shelton had the following severe impairments: degenerative disc disease of the lumbar spine, COPD/asthma, major depression, math disorder, reading disorder, disorder of written expression and history of polysubstance dependence in remission. At the third step, the ALJ found that Shelton did not have an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At the fourth step, the ALJ determined Shelton's RFC as follows:

> [Shelton] has the residual functional capacity to perform sedentary work . . . with the following additional limitations: occasionally climb, balance, stoop, kneel, crouch and crawl;

> never climb ladders, ropes or scaffolds; avoid concentrated exposures to cold; very simple, routine, repetitive tasks; few workplace changes; no contact with the public to perform job tasks; can interact with coworkers and supervisors but not in large groups; no more than basic reading; and no writing of reports as requirements of the job; no math calculations other than simple addition and subtraction; no exposures to pulmonary irritants.

Administrative Record at 12. Also at the fourth step, the ALJ determined that Shelton is unable to perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience and RFC, Shelton could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Shelton was not disabled.

### B. Objections Raised By Claimant

Shelton argues that the ALJ erred in two respects. First, Shelton argues that the ALJ erred by failing to consider whether he was presumptively disabled because his impairment of borderline intellectual ability equals Listing § 12.05C for mild mental retardation. Second, Shelton argues that the ALJ's RFC assessment is flawed because the record was not fully and fairly developed and it is not based on substantial evidence in the record.

### 1. *Listing 12.05C*

Listing 12.05C provides in pertinent part:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. In *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006), the Eighth Circuit summarized the requirements of Listing 12.05C as follows:

> a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

*Id.* at 899.

Here, Shelton scored a full IQ score of 72. Clearly, Shelton does not meet the first requirement of Listing 12.05C, as his full IQ score is not between 60 and 70. Due to Shelton's full IQ score being above 70, the ALJ apparently believed that he was not required to address Listing 12.05 in his decision. While there is no error in the ALJ's implicit conclusion that Shelton does not *meet* the requirements of Listing 12.05C, Shelton argues that the ALJ erred because he did not address whether his impairments *equaled* Listing 12.05C. Shelton is correct.

In *Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003), the Eighth Circuit pointed out that the Commissioner issued instructions for determining medical equivalence in the Program Operations Manual System ("POMS"). *Id.* at 424. The applicable POMS provision for determining medical equivalence and mental retardation under Listing 12.05C states in pertinent part:

> Listing 12.05C is based on a combination of an IQ score with an additional significant mental or physical impairment. The criteria of this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g. 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation of function may support an

> equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § DI 24515.056. In *Shontos*, the claimant had an IQ score of 72, and medical evidence from her treating doctors which indicated that she had difficulty with anxiety and depression which would interfere with her ability to work. *Shontos*, 328 F.3d at 424. The ALJ who considered Shontos's claim did not consider the POMS guidelines. *Id*. The Eighth Circuit determined that the ALJ's failure to consider the POMS guidelines was error. *Id*. Specifically, the Eighth Circuit found that "[a]lthough POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines." *Id*. (citing *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000); *List v. Apfel*, 169 F.3d 1148, 1150 (8th Cir. 1999)). The Eighth Circuit concluded that Shontos's impairments, including "borderline intellectual functioning, psychiatric affective disorders, and physical disabilities, were medically equivalent to [L]isting 12.05C," and remanded the case for an award of benefits. *Id*. at 427.

Similar to *Shontos*, Shelton had a full IQ score of 72. Twice at the request of DDS, Shelton underwent psychological evaluations by Dr. Harlan J. Stientjes, Ph.D. In both evaluations, Dr. Stientjes diagnosed Shelton with borderline general ability/intellectual functioning. In 2012, Dr. Stientjes found that:

> [Shelton] read slowly and laboriously, needing several words supplied. Content recall was vague. . . . He was unable to make any correct calculations in serial subtraction. He repeated three words as requested and later remembered one of them. Letter Number Sequencing score was at the 5th percentile. He made two errors in repeating a sentence but correctly followed a 3-step oral instruction.

Administrative Record at 597. In 2014, Dr. Stientjes found that Shelton was unable to read a passage from a book at the 4th grade reading level. He made two errors in

following a 3-step oral instruction. He had 25% recall of a short story read to him. In addition to diagnosing Shelton with borderline intellectual ability, Dr. Stientjes also diagnosed him with math disorder, reading disorder and disorder of written expression. Furthermore, with regard to Shelton's IQ testing, Dr. Stientjes opined that Shelton's:

> [a]cademic skills are very poor and likely impaired. General cognitive ability was assessed and verbal and non-verbal reasoning appear to be in the borderline to low average range. Inattention and effort depress the working memory and processing speed index scores. Overall functioning is consistent with borderline intellectual functioning.

*Id.* at 686.

Additionally, the record demonstrates that Shelton required special education throughout his schooling. He dropped out of school in the eleventh grade. Dr. Stientjes noted:

> [Shelton] received special education services starting at 3rd grade and was teased frequently. He dropped out of school in the 11th grade, saying his girlfriends had done his homework prior to that time. He attempted to get a GED but cannot pass the tests. Test results reportedly say he has a 3rd grade reading level.

*Id.* at 596. The court believes that there is sufficient evidence that Shelton's boderline intellectual functioning manifested itself as an impairment before age 22. *See Maresh*, 438 F.3d at 899 (providing the requirements for meeting Listing 12.05C).

Finally, the Commissioner acknowledged that "[Shelton's] other severe impairments would have satisfied [the final requirement of § 12.05C] of at least one other physical or mental impairment." Commissioner's Brief at 11.

Based on the evidence in the record, the court finds that the ALJ's failure to address the POMS guidelines or consider whether Shelton's borderline intellectual functioning combined with his other significant impairments were medically equivalent to Listing 12.05C was error. *See Shontos*, 328 F.3d at 424-27 (instructing ALJs to consider the

POMS guidelines when considering equivalency under Listing 12.05C). Interestingly, while the ALJ determined that Shelton's math disorder, reading disorder and disorder of written expression were severe impairments, the ALJ did not find borderline intellectual functioning to be a severe disorder. It is even more curious because the ALJ "accorded great weight to the opinion of Dr. Stientjes based on the scores of the WAIS-IV and cumulative mental status examinations," and it was the WAIS-IV IQ score of 72 which led Dr. Stientjes to diagnose Shelton with borderline intellectual ability. *See* Administrative Record at 16. Accordingly, the court determines that remand is necessary. On remand, the ALJ must fully consider and address Shelton's diagnosis of borderline intellectual ability, and the ALJ must determine whether Shelton's impairments are medically equivalent to Listing 12.05C.

### 2. *RFC Assessment*

Shelton argues that the ALJ's RFC assessment is not supported by substantial evidence in the record because the ALJ failed to consider all of his functional limitations, including borderline intellectual ability. Specifically, Shelton argues that when determining his RFC assessment, the ALJ failed to address and consider all of the medical evidence in the record which supports significant functional limitations, including whether his borderline intellectual ability is equal to Listing 12.05C. Shelton maintains that this matter should be remanded for further development of his RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *See Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same).

Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). "While the ALJ must consider all of the relevant evidence when determining a claimant's RFC, the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "deserving claimants who apply for benefits receive justice." *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Here, the court has already determined that remand is necessary because the ALJ failed to fully and fairly develop the record with regard to his diagnosis of borderline intellectual ability and address whether such a diagnosis is equal to Listing 12.05C. *See supra* Part V.B.1. Because the ALJ did not fully and fairly develop the record with regard to Shelton's diagnosis of borderline intellectual ability, the court finds that the ALJ's RFC assessment is not based on all of the relevant evidence. *See Guilliams*, 393 F.3d at 803. Accordingly, the court determines that remand is necessary to allow the ALJ to make his

RFC assessment for Shelton based on all of the relevant evidence, including his diagnosis of borderline intellectual ability.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 n.1 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the court concludes that the medical records as a whole do not "overwhelmingly . . . support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) consider whether Shelton's borderline intellectual ability combined with his other significant impairments was medically equivalent to Listing 12.05C; and (2) base his determination of Shelton's RFC on all of the relevant evidence.

## VI. CONCLUSION

The court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must determine whether Shelton's impairments

are medically equivalent to Listing 12.05C. The ALJ must also make his RFC determination based on all of the relevant evidence. Accordingly, this matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**DATED** this 10th day of March, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA